IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CT-3029-FL

| | | |
|---|---|---|
| WILLIAM BRANDON CHILES, Plaintiff, | ) | |
| v. | ) | ORDER |
| DOMANICK D. SMITH, CROMER HAIGLER, MACEO WILKINS, and REGGIELETTE COLEY, Defendants. | ) | |

This matter is before the court on defendant Reggielette Coley's motion for summary judgment (DE 74) under Federal Rule of Civil Procedure 56. This motion is fully briefed and the issues raised are ripe for ruling.

**STATEMENT OF THE CASE**

Plaintiff, a state inmate proceeding pro se, commenced this action by filing complaint January 26, 2023, asserting claims for violations of his civil rights under 42 U.S.C. § 1983. Plaintiff alleges excessive use of force against nonmoving defendants Domanick D. Smith ("Smith") and Maceo Wilkins ("Wilkins"), in violation of the Eighth Amendment to the United States Constitution.[1] Plaintiff alleges that defendant Reggielette Coley ("Coley") tacitly approved the excessive force and "encouraged the illegal action and misconduct." (DE 1 at 5).

[1] Plaintiff also alleges bystander liability against defendant Cromer Haigler ("Haigler"). Defendant Haigler has not appeared in this action since its inception, and the court has stayed any default judgment proceedings pending resolution of the claims against the other defendants. (DE 48).

Defendant Coley, who was sued in her individual capacity, was a correctional officer and unit manager at Maury Correctional Institution ("Maury CI") during the relevant period.

Following a period of discovery, and in accordance with the case management order, defendant Coley filed the instant motion for summary judgment. The remaining defendants did not file dispositive motions, and further case scheduling as to these defendants is addressed below.

By the instant motion, defendant Coley argues that, based on the record evidence produced through discovery, plaintiff cannot show a triable issue of fact on his claim for bystander liability and that defendant Coley is entitled to qualified immunity. In support, defendant Coley submits a memorandum of law, statement of material facts, and appendix of exhibits including: 1) witness statements from the North Carolina Department of Public Safety ("DPS") investigation;[2] 2) photographic evidence of a plastic shank purportedly taken from plaintiff during the incident; 3) administrative grievance records related to the incident; and 4) plaintiff's disciplinary infractions history from April 26, 2008, through July 4, 2023.

Plaintiff responded in opposition. Plaintiff argues that his claim against defendant Coley is based on a theory of supervisory liability, not bystander liability, that genuine disputes of material fact preclude summary judgment on this claim, and that defendant Coley is not entitled to qualified immunity. In support, plaintiff relies on a memorandum of law, opposing statement of facts, and appendix of exhibits including: 1) witness statements from the DPS investigation; 2) administrative grievance records and an incident reports related to this and other incidents; 3) a prior complaint filed with the North Carolina Industrial Commission alleging misconduct at Maury

[2] At the time of the alleged incident and subsequent grievance procedures, adult corrections in North Carolina were housed under the North Carolina Department of Public Safety. The North Carolina Department of Adult Correction began operating as an independent agency in 2023.

CI; 4) photographs of injuries sustained in the incident; 5) the chain of custody report for the weapon purportedly confiscated from plaintiff during the incident; 6) medical appointment request records stemming from the incident; and 7) defendants Smith, Wilkins, and Coley's discovery responses.

Defendant Coley replied in support of summary judgment. In the reply, defendant Coley argues that plaintiff's supervisory liability claim, to the extent it was ever alleged, was dismissed on frivolity review. Alternatively, defendant Coley argues that plaintiff's supervisory liability claim fails on the merits. In either case, defendant Coley argues that plaintiff's claim against her should be dismissed.

## STATEMENT OF FACTS

The court recounts the facts in the light most favorable to plaintiff. On December 16, 2020, plaintiff was an inmate at Maury CI and housed in the G-pod while on restrictive housing for control purposes. (Pl's Aff. (DE 1) at 6).[3] On December 16, 2020, plaintiff stuck a broom previously given to him by a correctional officer through the food pass in his cell door and began banging it. (Id.). The correctional officer responsible for passing out food trays told plaintiff that "he and his dogs (co-workers) were going to beat [plaintiff's] a** once they got [plaintiff] out of [his] assigned cell." (Id.). He also threatened that he was going to "knock [plaintiff's] little a** out once he got [plaintiff] off camera." (Id.).

Soon after, defendant Smith and "a compliment of other employees" approached plaintiff's cell. (Id.). Defendant Smith ordered plaintiff to submit to handcuffs, and plaintiff refused

[3] Throughout this order, page numbers in citations to documents in the record are to the page number specified in the footer of the document supplied by the court's case management/electronic case filing (CM/ECF) system for the docket entry (DE) and not the page number, if any, showing on the face of the underlying document.

because some correctional officers were not wearing masks despite a recently reported case of COVID-19 at Maury CI. (Id. at 6-7). Defendant Smith responded, "You don't got to worry about no COVID, what you need to worry about is this beating you're about to get if you don't cuff up." (Id. at 7). Defendant Smith then instructed another officer to retrieve a capture shield for entry into plaintiff's cell. (Id.). When plaintiff asked about the need for a capture shield, defendant Smith responded, "because you're in there hurting yourself." (Id.). Plaintiff objected that he wasn't hurting himself, and defendant Smith responded, "Well that's what my statement is going to say." (Id.). Plaintiff then submitted to handcuffs behind his back. (Id.).

Other inmates in plaintiff's pod provided written witness statements following the incident. According to inmate James Vasquez, as plaintiff was being led away from his cell in handcuffs, defendant Smith stated, "Oh we going to see how tough you are, we going to whip your [a**] and show you we can and won't nothing happen and cover it up." (Pl's App. Ex. 13 (DE 80-13) at 11). Inmate Jeremy Jackman reported that defendant Smith said he was, "gonna go get something and plant it" and "beat [plaintiff's] a**." (Id. at 12).

Once outside his cell, plaintiff was searched. (Pl's Aff. (DE 1) at 7). He was then placed in a holding cell and searched again by defendants Smith and Coley. (Id.). A few minutes later, while plaintiff was still in the holding cell, defendant Coley told defendants Smith and Wilkins "to go ahead and handle that" and then, according to plaintiff, "conveniently got missing." (Id.).

After defendant Coley left, defendants Smith and Wilkins took plaintiff, who was still in restraints, to a staff bathroom and beat plaintiff. (Id. at 7-8). Plaintiff contends he was struck so hard by defendant Smith that he was thrown from his feet and knocked unconscious. (Id. at 8). Defendants Smith and Wilkins "took turns punching, choking and stomping on [plaintiff]" while

defendant Haigler stood at the bathroom door and watched. (Id.). After the incident, defendants Smith and Wilkins took plaintiff to the infirmary and reported that they had to use force after plaintiff refused a search. (Id.).

Defendants dispute plaintiff's telling of events. In a witness statement prepared after the incident, defendant Smith states that plaintiff was placed in a holding cell after contraband was discovered in his cell. (Def's App. Ex. 3 (DE 76-3) at 2). According to defendant Smith, plaintiff brandished a plastic shank that he later handed over to staff upon direction. (Id.). Plaintiff then became noncompliant and stepped toward defendant Smith "in a[n] aggressive manner while raising his right hand." (Id.). Defendant Smith reported that he responded by performing an "armbar takedown" and escorted plaintiff to the infirmary for screening. (Id.). While defendants have produced photographic evidence of a plastic shank purportedly confiscated from plaintiff during the incident, (Def's App. Ex. 4 (DE 76-4), at 2), they admit that plaintiff "received no conduct infractions for any action committed on December 16, 2020." (Pl's App. Ex. 14 (DE 80-14) at 10).

## COURT'S DISCUSSION

### A. Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must

then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [the record] must be viewed in the light most favorable to the party opposing the motion.").

But "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (cleaned up). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based upon speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one

reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B. Analysis

First, the court must determine whether plaintiff has an active claim against defendant Coley for supervisory liability under the Eighth Amendment to the United States Constitution. In the complaint, plaintiff alleges that defendant Coley "encouraged the illegal action and misconduct" by "giving her 'nod of approval' when she stated, 'ya'll go ahead and handle that,'" and thus "violated [plaintiff's] rights under the Eighth Amendment." (Compl. (DE 1) at 11). Interpreting plaintiff's claim against defendant Coley as one for bystander liability, the court allowed plaintiff "to proceed with his excessive force and bystander liability claims." (Aug. 29, 2023, Order (DE 9), at 2).

Based on the court's language, defendants argue plaintiff never alleged supervisory liability, and, to the extent he did, this claim was dismissed on frivolity review. (Def's Reply (DE 82), at 1-2). Plaintiff contends his claim has always been for supervisory liability against defendant Coley, not bystander liability. (Pl's Mem (DE 80-1) at 1-2).

Recognizing that pro se pleadings should be "liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), the court accepts plaintiff's argument that he intended to bring a claim for supervisory liability against defendant Coley. Contrary to defendant Coley's position, the only claims dismissed on frivolity review were plaintiff's official capacity claims, which could not proceed under 28 U.S.C. § 1983 and were also

barred under the Eleventh Amendment. (Aug. 29, 2023, Order (DE 9), at 2). As a result, plaintiff may proceed with his supervisory liability claim.

To the extent plaintiff's complaint may have contained a bystander liability claim against defendant Coley, however, plaintiff has failed to defend this claim in opposition to defendant Coley's summary judgment motion. Plaintiff therefore fails to carry his burden on summary judgment to provide admissible evidence creating a triable issue fact as to bystander liability. See Matsushita Elec. Indus. Co., 475 U.S. at 586–87. Plaintiff's supervisory liability claim, however, has been briefed fully by the parties, and so, the court continues with its analysis on this claim only.

In order to proceed on a theory of supervisory liability, plaintiff must show: 1) "the supervisor had actual or constructive knowledge that [her] subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury"; 2) the supervisor responded so inadequately "as to show deliberate indifference to or tacit authorization of the alleged offensive practices"; and 3) "there was an affirmative causal link" between the supervisor's inaction and plaintiff's alleged injury. See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994); see also Wilkins v. Montgomery, 751 F.3d 214, 226 (4th Cir. 2014). "This is not a theory of vicarious liability for the deeds or misdeeds of a subordinate. Rather, the supervisor is found liable for his or her own misconduct." Bolick v. Anderson, 169 F.4th 528, 541 (4th Cir. 2026) (citation and quotation marks omitted).

Since plaintiff's case was first filed three years ago, a single sentence has driven his claim against defendant Coley. After plaintiff was brought to a holding cell, defendant Coley arrived and searched plaintiff a second time with defendant Smith. Then, plaintiff heard defendant Coley

tell defendants Smith, Wilkins, and Haigler to "go ahead and handle that." (Pl's Aff. (DE 1) at 7). Afterwards, she left the area. According to an incident investigation performed by the prison, defendant Coley "left the facility for the day" after searching plaintiff. (Pl's App. Ex. 13 (DE 80-13), at 4). Plaintiff argues that "she conveniently got missing after giving her permission for them to physically torture [him]." (Pl's Aff. (DE 1) at 7).

Turning to the first prong of the supervisory liability analysis, defendant Coley argues there is no evidence she had knowledge of a constitutional violation. In opposition, plaintiff contends defendant Coley had the requisite knowledge because plaintiff had been "subjected to use of force on more than two occasions" while at Maury CI, and Maury CI correctional staff have been "accused of excessive use of force" in more than twenty cases in the United States District Court for the Eastern District of North Carolina since 2016. (Pl's Mem. (DE 80-1) at 3-4).

Even accepting these unverified allegations as true, they do not show that defendant Coley had actual or constructive knowledge that defendants Smith and Wilkins were about to engage in conduct that posed a "pervasive and unreasonable risk of constitutional injury" to plaintiff. "[A] supervisor cannot reasonably be expected to guard against the deliberate criminal acts of [her] properly trained employees when [she] has no basis upon which to anticipate the misconduct." Wilkins, 751 F.3d at 227-28 (citation and quotation marks omitted). Plaintiff does not argue that defendants Smith and Wilkins were improperly trained. Neither does he point to any prior use of force incidents involving any defendants in this case. On the contrary, defendants' responses to plaintiff's interrogatories show that defendants Smith and Wilkins have no disciplinary history. (Pl's App. Ex. 14 (DE 80-14) at 5).

Under the second prong, plaintiff contends defendant Coley provided her "tacit

authorization" of the alleged offensive practices when she told defendants Smith and Wilkins to "go ahead and handle that." (Pl's Mem. (DE 80-1) at 3). But plaintiff offers no evidence to suggest that defendant Coley was aware of defendant Smith's purported intention to "beat" plaintiff or Wilkins intention to join the beating. She was not present at plaintiff's cell during plaintiff's encounter with Smith and other correctional staff. Plaintiff does not describe defendant Coley overhearing or being told that defendants Smith and Wilkins planned to use excessive force against him. Neither did plaintiff raise any concerns with defendant Coley while she was on the scene to search him at the holding cell. Plaintiff's inferential leap from a facially benign instruction to supervisory approval of or indifference to a purportedly brutal beating by correctional staff is too tenuous to reach a jury. See Lovelace, 681 F.2d at 241 ("[I]t is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture.").

Because plaintiff has provided no evidence to suggest that defendant Coley responded inadequately, neither can he show an "affirmative causal link" between the same and plaintiff's alleged injuries. See Shaw, 13 F.3d at 799. Plaintiff has not presented sufficient evidence for defendant Coley to be "found liable for . . . her own misconduct" on his Eighth Amendment supervisory liability claim. Therefore, defendant Coley is entitled to judgment as a matter of law.

**CONCLUSION**

Based on the foregoing, defendant Coley's motion for summary judgment (DE 74) is GRANTED.

With respect to claims against remaining defendants, the court requires that the parties participate in a court-hosted settlement conference prior to trial setting. Accordingly, pursuant to

Local Alternative Dispute Rule 101.1, EDNC, this case is REFERRED to United States Magistrate Judge Brian S. Meyers, for a court-hosted settlement conference, for the purpose of resolving all remaining issues in dispute. The magistrate judge will notify the parties how he wishes to proceed. Any decision regarding appointment of counsel for plaintiff for purposes of the settlement conference shall be within the magistrate judge's discretion. In the event the parties do not reach a resolution of this action, further order regarding trial planning and scheduling will follow.

SO ORDERED, this the 9th day of September, 2026.

LOUISE W. FLANAGAN
United States District Judge